411 So.2d 434 (1982)
STATE of Louisiana
v.
Gary L. DAVIS.
No. 81-KA-1917.
Supreme Court of Louisiana.
March 1, 1982.
Rehearing Denied April 5, 1982.
*435 William J. Guste, Jr., Atty., Gen., Barbara Rutledge, Asst. Atty. Gen., Marion B. Farmer, Dist. Atty., Walter P. Reed, Abbott J. Reeves, Peter J. Garcia, Asst. Dist. Attys., for plaintiff-appellee.
George C. Ehmig, Gretna, for defendant-appellant.
SAVOIE, Justice Ad Hoc.[*]
On January 22, 1981, a Grand Jury Indictment was filed against Gary L. Davis, the defendant herein, thereby charging four separate violations of La.R.S. 40:967 by the unlawful distribution of cocaine on June 2, 1980, and June 25, 1980, and the unlawful distribution of marijuana on July 22, 1980, and July 28, 1980. The defendant pled not guilty to all four counts of the indictment and filed a Motion to Compel Disclosure of the Identity of the Confidential Informant. On May 12, 1981, the trial court heard and denied defendant's Motion to Compel Disclosure of the Identity of the Confidential Informant and the defendant thereupon exercised his right to a trial by jury. The jury returned unanimous guilty verdicts against the defendant on Counts one, two, and three, and found the defendant guilty by a vote of eleven to one on Count four. On June 18, 1981, the trial court sentenced the defendant to serve a period of seven and one-half years at hard labor on each of the four counts on which he was found guilty, and ordered the sentence imposed to run concurrently. The defendant appeals his conviction arguing each of his three assignments of error.
Sergeant George Walker of the Louisiana State Police testified that as an undercover agent, he made four separate purchases of illegal drugs from the defendant while they were in the presence of an unidentified confidential informer. On June 2, 1980, at approximately 5:00 P. M., Walker was in the presence of this confidential informant when the informant pointed out the defendant *436 as he was cleaning out his vehicle on Monroe Street in Covington. The informant indicated that the defendant was a person from whom Walker could purchase drugs. The informant introduced the defendant to Walker, and Walker asked the defendant if he could buy something. The defendant replied that he had some cocaine but only enough for himself. Walker asked if he could "score" a little of it anyway and the defendant pulled out a black pouch with a vial inside it. He then poured some white powder from the vial into the silver wrapping of an old cigarette package which he retrieved from the ground beside defendant's vehicle. Walker paid the defendant $10.00 and told him he would like to score some more if this stuff was any good. Walker subsequently placed this powder in a special envelope and turned it over to the Louisiana State Police Crime Unit. On July 22, 1980, at approximately 2:20 P. M. Walker purchased a bag of marijuana from the defendant for $20.00. On June 25, 1980, at approximately 3:20 P. M. Walker purchased cocaine from the defendant at his residence for $20.00. On July 28, 1980, at approximately 2:40 P. M. Walker purchased some hashish from the defendant for $20.00. The confidential informant was present during these three transactions. Each time Walker placed the substance in a marked envelope and submitted it to the Louisiana State Police Crime Unit for analysis. Results of the analyses revealed that the substances were cocaine, marijuana and hashish.
The defendant testified on his own behalf. He denied ever seeing Sergeant Walker before he met him in court for trial. He denied selling marijuana or cocaine to Walker or anyone else although he admitted smoking marijuana. He claimed that the police have been continually harassing him in an effort to obtain information on other dealers in narcotics and that they were trying to frame him.
ASSIGNMENT OF ERROR NO. 1
"The court committed reversible error in failing to order the state, prior to trial, to disclose the identity of the confidential informant ..." The Louisiana Supreme Court has recognized the informer privilege. On the question of whether the defendant can overcome the informer privilege and learn the name of the confidential informant, the leading case of State v. Dotson, 260 La. 471, 256 So.2d 594, 1971, Cert. denied, 409 U.S. 913, 93 S.Ct. 242, 34 L.Ed.2d 173, 1972, shows that the Louisiana Supreme Court has adopted a strict Roviaro balancing test.
In State v. Rhodes, 308 So.2d 770, 1975, the Louisiana Supreme Court reiterated its holding in Dotson, emphasizing that the burden is on the defendant to show exceptional circumstances warranting disclosure.
In State v. Santos, 309 So.2d 129, 1975, the Supreme Court held that a defendant must show that disclosure of the informant's identity is essential for his defense on the merits or for his grounds for motion to suppress.
In the case of State v. Williams, 347 So.2d 184, 1977, an informant and his wife accompanied a New Orleans narcotics agent to a local bar, where the informant introduced the defendant to the agent. Pretending to use their combined resources, which was really marked money, the informant and the agent purchased heroin from the defendant. At the trial, the defense counsel repeatedly tried to learn the name of the informant, but the trial judge sustained the state's objection to this inquiry. Relying on Dotson, the court noted that defense counsel had failed to make known to the trial judge the reason for his request for disclosure of the identity of the informant, or how it would affect his defense. Since the burden is on the defendant to show exceptional circumstances which would justify disclosure, the trial judge did not abuse his discretion in denying this discovery to the defendant.
One can conclude from the foregoing that there is a strong public policy in favor of protecting the identity of confidential informants in the State of Louisiana. (For an excellent analysis of this matter, see "DEFENDANT'S RIGHT TO CONFIDENTIAL INFORMANT'S IDENTITY" by Michael *437 D. Browers, Vol. 40, La. Law Review, P. 147, et seq.)
The state has thus followed the Roviaro case (supra) which is grounded on the "fundamental requirements of fairness". The key language in the Roviaro case is, as follows:
"The problem is one that calls for balancing the public interest in protecting the flow of information against an individual's right to prepare his defense. Whether a proper balance renders non-disclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony and other relevant factors".
Further, the courts have placed a heavy burden on the accused to specify concrete reasons why he needs to know the identity of the informant. It must also be noted that should the defendant show sufficient grounds for his requested disclosure, it will be reversible error for the trial court to fail to order such disclosure.
Roviaro and the cases which follow it have given us certain outlines in which to operate. At one end of the spectrum is the "mere tipster" cases. It is well settled that the Roviaro principle does not require disclosure and production of such an informant. At the other end of the spectrum are other cases such as Roviaro, itself, in which the informant has played a crucial role in the alleged criminal transaction, and disclosure and production of the informant are required to insure a fair trial. Additionally, the burden of proving why he needs to know the identity of the confidential informant is placed on the defendant. In other words, the defendant must convince the court that the informant may be able to give testimony which is necessary to a fair determination of the issue of guilt or innocence. Thus, the present case must be examined in the light of the outlines laid down in the Roviaro case and subsequently followed by this State Supreme Court in the cases of State v. Dotson, State v. Santos, and State v. Williams. (supra)
In the present case, the issue presented appears to be whether it was an abuse of discretion for the trial court to determine that the defendant did not meet his burden of demonstrating exceptional circumstances which would warrant disclosure of the confidential informant. The defendant argues in his brief:
"Finally, we call the court's attention to the fact that the unidentified, confidential informant, was present and participating in each transaction for which the defendant is charged and the defendant should have been given an opportunity to interrogate this informant with a view to the possible defense advantage of the informant's testimony. It is conceivable that the confidential informant, the only witness to the transaction, would have testified contrary to the state's interest. The defendant should have been given an opportunity to determine this."
With this statement, we must disagree. The record does indicate that the confidential informant was present in at least three of the four transactions. There is, however, nothing to indicate in the record that the confidential informant was a participant therein. The participants in this transaction were Sergeant Walker and the defendant. The case at hand is not a "mere tipster" case, neither is it a case in which the informant has played a crucial role in the alleged criminal transaction. We agree with the trial judge that the defendant failed to bear the burden of demonstrating exceptional circumstances pertaining to his defense which would gain the disclosure of the identity of the confidential informant. In the case of State v. James, 396 So.2d 1281 (La.1981) this court stated that the trial court is accorded great discretion in making the determination of whether or not to disclose the identity of a confidential informant. Under the facts of this case, we do not believe that the trial judge abused this discretion.
ASSIGNMENT OF ERROR NO. 2
"The court committed reversible error in allowing the physical evidence to be introduced *438 into evidence in view of the many missing links in the chain of evidence".
In the case at hand, Sergeant Walker recognized and identified the four envelopes containing the alleged contraband. As to count 1 of the indictment, Mary Sue Brown, of the Louisiana State Police Crime Laboratory, identified S-1 and S-1-A and testified that it was submitted by Sergeant Walker after which it was placed in the evidence room and signed out only by herself after which it was returned to the evidence room in the condition in which she viewed it in the courtroom. Sergeant Walker identified S-1-A as the substance which the defendant, Gary Davis, had sold to him and which he submitted to the crime lab in the envelope in which it was still placed.
As to count 2 of the indictment, Mr. Jerry Harrison testified that the evidence marked S-2-A and B for identification was submitted on July 24, 1980, at 10:05 A. M. and that the crime lab records indicated that Mr. Harrison was the only person who signed out for the evidence after it was locked in the evidence room. He further testified that the repacking envelope which he filled and sealed with the special tape had not been disturbed. Sergeant Walker identified S-2-A as the envelope in which he put the marijuana and submitted to the crime lab.
As to count 3 of the indictment, Mrs. Mary Sue Brown, of the Louisiana State Police Crime Laboratory, identified S-3, S-3-A and S-3-B and testified that she checked out this evidence, examined it and resealed it. Sergeant Walker identified S-3-B as the substance that the defendant, Gary Davis, sold to him and which he submitted to the crime lab.
As to count 4 of the indictment, Mr. Jerry Harrison of the Louisiana State Police Crime Laboratory, testified that the evidence, marked S-4-A and B for identification was submitted by Sergeant Walker on July 29, 1980, at 11:45 A. M. and kept in the evidence room and that no other persons signed it out. Sergeant Walker identified S-4-B as the object that the defendant sold to him and which he submitted to the crime lab.
The law relative to the defendant's contention is, as follows:
"To admit demonstrative evidence at trial, the law requires that the object be identified. The identification can be visual, that is, by testimony at the trial that the object exhibited is related to the case. It can also be identified by chain of custody, that is, by establishing the custody of the object from the time it was seized to the time it was offered into evidence. State v. Paster, 373 So.2d 170 (La.1979); State v. Drew, 360 So.2d 500 (La.1978). A continuous chain of custody is not essential to enable the state to introduce physical evidence as long as the evidence as a whole establishes that it is more probable than not that the object introduced was the same as the object originally seized by the officer. State v. Guzman, 362 So.2d 744 (La.1978)". State v. Godeaux, 378 So.2d 941 (La.1980).
The evidence was positively identified by Sergeant Walker. Additionally, the testimony of Sergeant Walker, Mr. Harrison and Mrs. Brown make it more probable than not that the evidence introduced relative to all four counts was the same as that sold to Sergeant Walker and submitted by him to the State Police Crime Laboratory. This assignment lacks merit.
ASSIGNMENT OF ERROR NO. 3
"The court committed reversible error in denying defendant's motion for a mistrial after the district attorney had proceeded to question the defendant relative to other arrests and confrontations with the police on matters unrelated to the crimes for which he was being tried, particularly, since no Prieur notice had been given."
The reading of the record reveals that the mentioning of other crimes and other arrests was initiated on direct examination by defense counsel of defendant. The question of previous arrests was raised by defendant himself in response to a question by defense counsel. Defense counsel's question was:

*439 "Alright, how many times have the police authorities asked you to become an informant for them?"
In response to this question, the defendant brought out two different instances in which he was arrested relative to the possession of drugs. (R., Tr., Vol. II, Pp. 254-255) Defendant's responses were in the nature of claiming constant harassment by the police. He also alleged that the police were attempting to frame him, that police had burst into his home without a search warrant, and other allegations of that nature. Cross-examination by the state was limited to rebuttal of the allegations made by the defendant either on direct examination by his defense counsel or on matters brought up by the defendant himself. The testimony, which defendant argues in his brief is prejudicial, was not elicited by cross-examination by the state. The defendant himself gave unresponsive answers to the state's questions, volunteering in lieu of responsive testimony, the irrelevant and prejudicial answers on which he now asks reversal.
The state has the right to rebut evidence of these by the defendant. Rebutting evidence is that which is offered to explain, repel, counteract or disprove facts given in evidence by the adverse party. (State v. Constantine, 364 So.2d 1011, La. 1978).
Since the testimony relied on was initiated by the defendant himself and since the defendant waived this argument on appeal by failing to contemporaneously object to the line of questioning and further, since the state, in its cross-examination, sought only to rebut the evidence which was offered by the defendant and, therefore, did not exceed the permissible scope of cross-examination or rebuttal evidence, this assignment is without merit.
For the above and foregoing reasons, the conviction and sentence are affirmed.
AFFIRMED.
DENNIS, J., dissents with reasons.
DENNIS, Justice, dissenting.
I respectfully dissent. Defendant carried his burden of demonstrating exceptional circumstances warranting disclosure of the informant's identity in the absence of specific countervailing factors shown by the state.
NOTES
[*] Judges Shortess, Carter and Savoie of the Court of Appeal, First Circuit, participated in this decision as associate justices ad hoc, joined by Chief Justice Dixon, joined by Associate Justices Calogero, Marcus and Dennis.